O’BRIEN, J.,
concurring.
I join the per curiam Order and Judgment, which properly affirms the denial of habeas relief. I write separately only to provide a more robust analysis of the issues.
To state a claim for relief cognizable under 28 U.S.C. § 2255, a petitioner must allege a violation of federal law constituting a “fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure[.]” United States v. Gordon, 172 F.3d 753, 755 (10th Cir.1999) (quotations omitted). According to the government Fernandez cannot obtain relief under § 2255 because the claimed error — counsel’s failure to file a certiorari petition to the Supreme Court when requested to do so in violation of our CJA Plan[1] — does not qualify. See Brown v. United States, 34 F.3d 990, 991 (10th Cir.1994) (“Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice.”); see also Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (holding trial court’s failure to ask defendant represented by counsel whether he had anything to say before imposing sentence “does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent”) (quotations omitted).
Fernandez admits his claim “falls outside § 2255’s remedial scope.” (Appellant’s Opening Br. at 16.) However, he urges this Court to follow the lead of the Second, Fourth, Fifth and Seventh Circuits and construe his § 2255 motion as a motion to recall the mandate in Fernandez I, and then reissue the decision to allow him to timely file a petition for writ of certiorari. See United States v. Johnson, 308 Fed.Appx. 768, 769 (5th Cir.) (unpublished), cert. denied, — U.S. -, 129 S.Ct. 2885, 174 L.Ed.2d 593 (2009); United States v. Smith, 321 Fed.Appx. 229, 233 (4th Cir.2008) (unpublished), cert. granted, — U.S. -, 129 S.Ct. 2763, —
*438 L.Ed.2d - and remanded to 357 Fed.Appx. 518 (2009); Nnebe v. United States, 534 F.3d 87, 92 (2d Cir.2008); United States v. Price, 491 F.3d 613, 616 (7th Cir.2007) (Ripple, J., in chambers); United States v. James, 990 F.2d 804, 804-05 (5th Cir.1993).
In Nnebe, the Second Circuit considered “what relief is available when, in violation of [its] rules implementing the [CJA], appellate counsel promises to file a certiorari petition, but fails to do so.” 534 F.3d at 88 (citation omitted). The government did not dispute Nnebe’s contention that his counsel was aware of his desire to petition for certiorari and forwarded him a draft petition which was never filed. It argued Nnebe was not entitled to relief under § 2255 because he “is required to show prejudice, but cannot, because his petition would almost certainly have been denied.” Id. at 90. Relying on Wilkins v. United States, 441 U.S. 468, 99 S.Ct. 1829, 60 L.Ed.2d 365 (1979),[2] Nnebe argued the court should, without requiring him to demonstrate prejudice, construe his appeal from the denial of his § 2255 motion as a motion to recall the mandate and vacate judgment to afford him one clear opportunity to file a certiorari petition. The Second Circuit agreed, explaining:
Given this construction [of Nnebe’s application as one to recall the mandate], it would be illogical to conclude that the application should continue to be treated as though it were a Section 2255 motion. The Supreme Court in Wilkins clearly signaled that the Courts of Appeals should make appropriate relief available so that defendants are not disadvantaged by the failures in representation by CJA counsel. This remedial purpose would be frustrated if the myriad procedural considerations that properly apply to Section 2255 motions, including that of demonstrating prejudice, are imported wholesale into “construed” applications. Consequently, Nnebe is not required to demonstrate prejudice by establishing that his certiorari petition would have been successful.
Nnebe, 534 F.3d at 91. In construing Nnebe’s application in this manner, the court bypassed the standards governing § 2255 motions. It did not require a showing of prejudice, not because counsel’s deficiency was based on a statutory violation as opposed to a constitutional error, but because it found extraordinary circumstances warranting construction of the application as a motion to recall the mandate, thus providing the relief it found “suggested by Wilkins.”[3] Id.
Wilkins, however, did not address such a remedy in the context of a § 2255 motion. Rather, the Wilkins Court was presented with an untimely pro se petition for certiorari following an unsuccessful direct appeal. 441 U.S. at 468, 99 S.Ct. 1829. Wilkins’ court-appointed attorney failed or refused to file a timely petition for writ of certiorari notwithstanding his written request to do so and despite assurance from the attorney that his request had been honored. Upon those facts, the Supreme the Court determined (on the government’s recommendation) the proper remedy was to vacate the judgment and remand *439 the case to the court of appeals so a timely petition for certiorari could be filed. Id. at 470-71, 99 S.Ct. 1829. The Supreme Court noted:
Had the petitioner presented his dilemma to the Court of Appeals by way of a motion for the appointment of counsel to assist him in seeking review here, the court then could have vacated its judgment ... and entered a new one, so that this petitioner, with the assistance of counsel, could file a timely petition for certiorari.
Id. at 469, 99 S.Ct. 1829 (emphasis added). The Court did not address whether this would be an appropriate remedy when presented to the court of appeals on collateral review.
As acknowledged by the Second Circuit in Nnebe, an appellate court’s power to recall a mandate “is limited and should be exercised only in extraordinary circumstances.” Our cases also urge caution. Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah, 114 F.3d 1513, 1522 (10th Cir.1997); see also United States v. Contreras, 224 Fed.Appx. 862, 865 (10th Cir.2007) (unpublished) (power to recall mandate should be used sparingly; power is “to be held in reserve against grave, unforeseen contingencies”) (quoting Calderon v. Thompson, 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)). The government contends Fernandez “has failed to show that his circumstances are sufficiently ‘extraordinary’ to merit the unusual remedy of recalling this Court’s mandate.” (Appellee’s Br. at 9.) I agree.
The Second Circuit concluded Nnebe had demonstrated extraordinary circumstances because he had proceeded with diligence and “proffered compelling documentary evidence” in support of his claim. 534 F.3d at 91-92. Specifically, the court credited Nnebe with seeking relief less than two months after he last heard from his attorney. Id. at 91. In fact, Nnebe sought relief under § 2255 less than 90 days after his conviction and sentence were affirmed. Id. at 89. Moreover, Nnebe attached correspondence from his attorney informing him that his conviction had been affirmed and advising “we must now seek a writ of certiorari in the Supreme Court of the United States.” Id. at 88 (quotations omitted). Nnebe also attached a draft certiorari petition prepared and signed by his CJA attorney which Nnebe claimed had been included with his attorney’s letter. Id. The court concluded these documents demonstrated “[Nnebe] requested his lawyer to file a certiorari petition and that his lawyer agreed to do so, but did not.” Id. at 92. In contrast, Fernandez has provided nothing other than his declaration that he “repeatedly requested” Lockhart to file a petition for certiorari. Accepting his declaration as true, a remedy similar to that provided in Nnebe is not warranted given Fernandez’s significantly less compelling circumstances, as well as his unreasonable delay in seeking relief.[4]
*440 Fernandez claims he instructed his attorney to file a certiorari petition; he does not claim his attorney promised to do so and he was clearly aware of the filing deadline, as demonstrated by his efforts to obtain an extension of the filing period. Moreover, he waited seven months after the expiration of the extended deadline (May 6, 2004) to seek habeas relief (December 9, 2004) and did not attach any documentary evidence to his petition. In addition, the government “specifically disputes Fernandez’s contention that he requested that Mr. Lockhart file a petition for certiorari.” (Appellee’s Br. at 24.) Fernandez argues “these purported distinguishing factors ... are meaningless. All that matters is that Mr. Fernandez did, as the district court found, ask Lockhart to file a petition for writ of certiorari, and Lockhart did not do so.” (Appellant’s Reply Br. at 8.) I am not convinced, however, that a court-appointed attorney’s failure to file a petition for certiorari when asked to do so by his client is sufficiently extraordinary, in and of itself, to warrant the exceptional remedy of recalling the mandate, particularly when the issue is presented by way of a 28 U.S.C. § 2255 motion in the district court.[5]
In Steele v. United States, the Eighth Circuit granted a COA on one issue in Steele’s § 2255 motion: “her claim that counsel’s failure to honor her request to file a petition for certiorari constituted ineffective assistance of counsel.” 518 F.3d 986, 987 (8th Cir.2008). In affirming the denial of her motion, the court concluded § 2255 relief was not available because Steele had no constitutional right to the effective assistance of counsel in seeking certiorari review in the Supreme Court. Id. at 988.[6] Although Steele contended the court’s CJA plan created a statutory right to effective assistance of counsel in filing a petition for certiorari, it did not consider a recall of its mandate to allow her an opportunity to file a timely petition. Rather, the court applied the standards governing § 2255 motions. Id. at 988-89. It stated: “Even if she had the right to counsel to file a certiorari petition, Steele would have had to show that she suffered prejudice from her attorney’s failure to file a petition in order to establish a claim for ineffective assistance of counsel.” Id. at *441 988 (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052).
Because the circumstances presented here are neither extraordinary nor grave, Fernandez’s § 2255 petition should not be construed as a motion to recall the mandate. Therefore, his claim must be evaluated in the context of the standards governing federal habeas petitions alleging ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim under § 2255, a petitioner must show: (1) “counsel’s performance was deficient” (ie., “fell below an objective standard of reasonableness”) and (2) “the deficient performance prejudiced the defense.” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052.[7] The Strickland test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal without the client’s consent after having been requested to do so. Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). It seems inconceivable that a lesser standard would apply when the claimed basis is statutory rather than constitutional. If the Strickland test is appropriate where counsel failed to file a notice of appeal (when an appeal is a matter of right), the test should also be appropriate where, as here, counsel failed to file a petition which affords only the (remote) possibility of discretionary relief.
A. Deficient Performance of Counsel
As the per curiam Order and Judgment recognizes, indigent defendants do not have a constitutional right to counsel in pursuing discretionary review. See Austin v. United States, 513 U.S. 5, 8, 115 S.Ct. 380, 130 L.Ed.2d 219 (1994) (“[T]hough indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, that right does not extend to forums for discretionary review.”) (citation omitted). Generally, where there is no constitutional right to counsel there can be no claim of constitutionally ineffective assistance of counsel. See Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); Steele, 518 F.3d at 988. Thus, Fernandez cannot show his attorney’s performance was deficient because it violated the Sixth Amendment. See S.Ct. R. 10 (“Review on a writ of certiorari is not a matter of right, but of judicial discretion.”).
Fernandez argues his attorney’s performance was deficient because it violated our CJA Plan, which provides indigent defendants with a limited statutory right to have appointed counsel prepare and file a petition for a -writ of certiorari. If Fernandez requested the filing of a certiorari petition (which I assume he did), then his counsel was obligated by our CJA Plan to file such a petition, but only if he determined there was, inter alia, a non-frivolous basis for doing so.[8] The record here does not provide sufficient information to determine whether counsel’s failure to file the requested petition for certiorari was a considered choice and, if so, whether it fell below an objective standard of reasonableness. But that is immaterial because Fernandez cannot show prejudice. See Strick *442 land, 466 U.S. at 697, 104 S.Ct. 2052 (courts need not determine whether counsel’s performance was deficient if it is easier to dispose of an ineffectiveness claim for lack of prejudice).
B. Prejudice
To establish prejudice, Fernandez must show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id., at 694, 104 S.Ct. 2052. The government urges us to adopt the standard for assessing prejudice as set forth in Steele, supra, where the Eighth Circuit required petitioner “to show not only that she would have succeeded in obtaining a writ of certiorari if counsel had filed a petition, but also a reasonable probability that she would have obtained relief as to her sentence.” 518 F.3d at 988-89. Fernandez argues Steele’s approach is unreasonably stringent and insists he need only show that, but for counsel’s violation of the CJA, he would have petitioned for discretionary review by the Supreme Court. I believe the appropriate showing lies between these two extremes.
The Strickland Court recognized three categories of cases in which prejudice is presumed. First, where there is the “[a]c-tual or constructive denial of the assistance of counsel altogether.” 466 U.S. at 692, 104 S.Ct. 2052; see also United States v. Cronic, 466 U.S. 648, 658-59, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Second, “various kinds of state interference with counsel’s assistance” can warrant a presumption of prejudice. Strickland, 466 U.S. at 692, 104 S.Ct. 2052. Third, “when counsel is burdened by an actual conflict of interest ... if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer’s performance.” Id. (quotations omitted). As to the first two categories, the Court explained “[prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.” Id.
This case does not fit; there is no allegation (or record evidence) of state interference or a conflict of interest. And there was no actual or constructive denial of the assistance of counsel. Prejudice must be demonstrated. A petitioner could, perhaps, show prejudice where his attorney promised, but failed, to file a timely certiorari petition, particularly if the petitioner relied upon that promise and thereby failed to exercise self-help. But that is not the case here. Fernandez was aware of the deadline and even attempted self-help. He claims he obtained an extension of the filing deadline, but does not claim he requested the appointment of substitute counsel. More is required to demonstrate Strickland prejudice. In any event, if a petition for certiorari would have been demonstrably futile there is no prejudice.
Fernandez cites to Roe in support of his argument that he need only show a reasonable likelihood that, but for counsel’s deficient conduct, he would have petitioned the Supreme Court for review. In Roe, the Court held “counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal ..., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.” Roe, 528 U.S. at 480, 120 S.Ct. 1029. It then held “to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel’s defi *443 cient failure to consult with him about an appeal, he would have timely appealed.” Id. at 484, 120 S.Ct. 1029.
Neither the Supreme Court nor any Court of Appeals has extended Roe to petitions for writ of certiorari and it is not warranted. The Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal of right. See Evitts v. Lucey, 469 U.S. 387, 396-7, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Where counsel fails to timely file a notice of appeal, the defendant “forfeit[s] a judicial proceeding to which he was otherwise entitled.” Roe, 528 U.S. at 485, 120 S.Ct. 1029. And, as the Roe Court noted, “[f]il-ing ... a notice [of appeal] is a purely ministerial task that imposes no great burden on counsel.” Id. at 474, 120 S.Ct. 1029. By contrast, the Constitution does not guarantee a criminal defendant the right to counsel to pursue a certiorari petition; nor is certiorari review by the Supreme Court a judicial proceeding to which a criminal defendant is entitled. See S.Ct. R. 10; Austin, 513 U.S. at 8, 115 S.Ct. 380. Moreover, filing a proper certiorari petition is hardly a ministerial duty; it requires considerable effort and insight. In light of these significant differences between notices of appeal and petitions for writ of certiorari (as well as the specific provisions of our CJA Plan), and absent any contrary authority from the Supreme Court, we should not presume ultimate prejudice from counsel’s failure to file a petition for certiorari, even when requested to do so.
In his § 2255 motion, Fernandez argues he was prejudiced by counsel’s failure to file a certiorari petition because he lost the benefit of Blakely. The district court rejected this argument because Fernandez’s conviction became final before Blakely was decided (June 24, 2004). Fernandez contends:
The district court overlooked the fact that Blakely had been argued on March 23, 2004, which, shows that Blakely would have been docketed prior to [Fernandez’s] due date for filing the writ. Therefore, had counsel filed the writ of certiorari as requested ... the writ would have been filed subsequent to Blakely being filed. Therefore, Blakely would have been decided prior to [Fernandez’s] case being decided and Blakely would have applied to [his] because [his] case would not have been final.
(Appellant’s- Pro Se Br. at 3D.) Fernandez’s argument is not without merit. If his case was in the pipeline when Blakely was decided he would not be subject to the retroactivity test imposed on collateral review cases. But he overlooks the most salient fact-even if his case had not been final when Blakely was decided, he would still not be entitled to relief.
In Blakely, the Supreme Court invalidated the State of Washington’s sentencing scheme, holding it violated the Sixth Amendment because it required a sentencing court to impose a sentence not solely based on “facts reflected in the jury verdict or admitted by the defendant.” Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted). The Court held any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Id. at 301, 124 S.Ct. 2531. Fernandez claims Blakely would have invalidated the four-point enhancement he received for his role as a leader and organizer. He is mistaken. Fernandez was sentenced under the federal sentencing guidelines; Blakely involved state sentencing guidelines.
*444 Nevertheless, and predictably, in Booker, the Court held the Sixth Amendment as construed in Blakely applied to the federal sentencing guidelines. 543 U.S. at 244, 125 S.Ct. 738. But Booker does not apply retroactively to cases on collateral review. See Bellamy, 411 F.3d at 1186-87. Though he does not argue the point, Fernandez would be entitled to relief if his petition for certiorari was in the pipeline when Booker was decided on January 12, 2005. But Fernandez’s certiorari petition would have to have been filed either by March 7, 2004, or May 6, 2004 (with the extension he claims he received). See per curiam Order and Judgment at n. 1. For the purpose of showing Strickland prejudice, it is far too speculative for us to presume his case would have remained in the pipeline for a period of between eight and ten months.[9] Thus, even if his counsel had filed a timely certiorari petition it is highly unlikely Fernandez would have been able to avail himself of the rule announced in Booker. But he has an even more fundamental problem.
It is quite clear the Supreme Court would not have granted Fernandez’s cer-tiorari petition to decide the constitutionality of the federal sentencing guidelines even if it had been timely filed. It is, indeed, a daunting task for a petitioner to demonstrate that his certiorari petition would have been granted because “[r]e-view on a writ of certiorari is not a matter of right, but of judicial discretion.” S.Ct. R. 10. The Court grants few petitions and then “only for compelling reasons.”[10] Id. For Fernandez, the task is nearly impossible because the Supreme Court would almost never issue a writ of certiorari to review an issue not preserved in the lower courts. Though he did challenge the sentencing enhancement he received on direct appeal, Fernandez did not claim in the district court or on appeal that the sentencing process was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which had already been decided.[11] By contrast, the defendants in both Blakely and Booker — whose certiorari petitions were granted^ — expressly challenged the constitutionality of the schemes under which they were sentenced in their direct appeals. See State v. Blakely, 111 Wash.App. 851, 47 P.3d 149, 159 (2002); United States v. Booker, 375 F.3d 508, 510 (7th Cir.2004).
Fernandez is not entitled to relief even if we accept as true his contention that he asked his attorney to file a certiorari petition because he cannot demonstrate prejudice and there is no rational basis for us to presume prejudice. The district court was right for the wrong reasons. See United States v. Whalen, 976 F.2d 1346, 1348 (10th Cir.1992); see also Swoboda v. Dubach, 992 F.2d 286, 291 (10th Cir.1993) (“[We] can affirm for reasons other than those relied on by the district court, as *445 long as those reasons find support in the record.”).

. The CJA Plan for the Tenth Circuit is reproduced in the per curiam Order and Judgment at n. 6.

. The legal landscape changed considerably after Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See infra n. 7.

. The court said "we do not retreat from our view that recalling a mandate is an unusual remedy intended for extraordinary circumstances.” Nnebe, 534 F.3d at 91. "Had Nnebe waited an unreasonable length of time to seek relief or presented less compelling evidence, we doubt his circumstances would have been extraordinary or that he would have been entitled to the relief we afford him.” Id. at 92.

. I am not persuaded by cases from other circuits affording the remedy requested by Fernandez. In Smith, the defendant claimed, and the government conceded, he had requested counsel to file a petition for certiorari and counsel agreed to do so but did not in violation of the CJA. 321 Fed.Appx. at 231. The government did not object to the treatment of Smith's § 2255 motion as a motion to recall the mandate or the grant of that motion. Id. at 233.
In Price, appointed appellate counsel sent Price a letter advising that the next step would be to file a writ of certiorari to the Supreme Court and stating: "We will begin the process and let you know the outcome as soon as possible.” 491 F.3d at 615 (quotations omitted). Judge Ripple concluded this letter, "fairly read, advised Mr. Price that counsel was preparing to file a petition for certiorari.” Id. at 616. Further, counsel did not inform Price the petition for certiorari *440 had not been filed until long after the time for filing had passed, thus depriving Price of the opportunity to seek relief from the Court. Id. at 616-17.
Finally, in James, the issue came before the Fifth Circuit Court of Appeals on a pro se motion for appointment of counsel to file a petition for certiorari with the Supreme Court after the time for doing so had expired. 990 F.2d at 804. The appellant submitted an affidavit and copies of correspondence showing he timely requested, in writing, that his court-appointed counsel petition for certiorari. Id. at 804-05. Following the procedure suggested in Wilkins, the court of appeals vacated and reinstated its previous judgment and directed counsel to timely file a petition for certiorari with the Supreme Court. Id. at 805.

. But cf. Johnson, 308 Fed.Appx. at 769 (relying on Fifth Circuit precedent granting § 2255 relief on claims that appellate counsel failed to advise a defendant of his ability to seek certiorari review in violation of that court's CJA Plan, and without discussion of standard for recalling a mandate, court recalled mandate and appointed counsel to file petition for certiorari); Smith, 321 Fed.Appx. at 233 (finding deprivation of CJA right to counsel's assistance in filing a petition for certiorari sufficiently extraordinary to warrant treatment of § 2255 motion as one to recall the mandate).

. See also Nichols v. United States, 563 F.3d 240, 250-51 (6th Cir.2009) (denying § 2255 relief where counsel performed deficiently under court's procedural rules requiring court-appointed counsel to file petition for certiora-ri in the Supreme Court if requested by client).

. Wilkins, supra, was decided in 1979, well before the comprehensive test for relief for ineffectiveness of counsel was announced in Strickland.

. Lockhart did not seek leave to withdraw as counsel as recommended, but not required, by our CJA Plan. See 10th Cir. Rules, Addendum I, Part VI (“[C]ounsel should promptly ... advise the client [that there are no non-frivolous ground for seeking Supreme Court review] and submit to this court a written motion for leave to withdraw from the representation after the entry of judgment.") (emphasis added).

. The petitions for certiorari in Booker were filed on July 21, 2004, and were granted on August 2, 2004. The case was argued on October 4, 2004.

. In the 2007 term, 8,241 certiorari petitions were filed. See 2008 Year-End Report on the Federal Judiciary at 10, available at http:// www.supremecourtus.gov/publicinfo/year-end/year-endreports.html. "The success rate for certiorari petitions ... is approximately 1.1%.” Caperton v. A.T. Massey Coal Co., - U.S. -, 129 S.Ct. 2252, 2272, 173 L.Ed.2d 1208 (2009) (Roberts, C.J., dissenting).

.In Apprendi, the Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. 2348.